Probate Court of Summit County.

IN RE EMANUEL H. WIENER, GDN.

Decided August 8, 1933.

*Brouse, Engelbeck, McDowell, May & Bierce,* for applicant, Lenore Wiener Lebensburger.

*Slabaugh, Sieberling, Huber & Guinther* and *C. G. Roetzel,* for guardian, Emanuel H. Wiener.

MAY, J.

This is an action to remove a guardian of an estate. This form of relief was formerly one of equitable jurisprudence. Equitable courts, in exercising this jurisdiction, represented the will of the sovereign state in the protection which the state exercised over incompetents, such as infants, idiots, lunatics and other persons who, for one reason or another, were unable to protect themselves, and whose protection, therefore, the state itself assumed.

In Ohio, this equitable jurisdiction is vested in the Probate Court. This court, must therefore, be guided by, and must apply the recognized rules of equitable jurisprudence in making disposition of the application for removal, filed, heard and submitted herein.

In determining this question, the court feels that it should be guided solely by what would be to the best interests of the infants, in whose behalf the application is filed.

The questions presented arise out of the will and subsequent proceedings had thereunder of Charles H. Wiener, who died in 1929. Under this will, after the payment of his debts, he left his property in trust with The First Trust and Savings Bank. This bank was likewise designated as his executor. The will also contained the request that his brother, Emanuel H. Wiener, should be appointed "guardian of the property and estate of any of my children who have not reached their majority at the time of my decease." The testator left surviving him his three boys, all of whom then were, and still are minor children, to-wit: Eldon, Daniel and Ralph. The trust established by this will was solely for the use and benefit of these infants, and their possible issue in the event of their decease prior to attaining the age of twenty-five years. If surviving at the age of twenty-five years, the entire corpus of this estate is to become theirs absolutely, each to receive his equal one-third.

The trustee under this will has the legal title to the corpus. It also has by the will, a power of disposition, together with a power of reinvestment of the proceeds derived from the disposition of any property. It may be noted, however, that under the doctrine of strict construction of power, it is doubtful if the trustee has or had under this will the power to sell on credit. The power to sell

only, it is held under the doctrine of strict construction, does not authorize a sale on credit, but is presumed to be for cash only.

The trustee under this will has no title to the net income derived from the corpus, itself. The specific direction in this will, is that the net income is to be paid to the testator's three children, during minority to their guardian, and thereafter to each of them personally. So that, after a determination of the net income, it becomes the duty of the trustee to pay the money over to the guardian of the estate of these three children and the legal title, then, is in such guardian. This was the requirement of this will at the time of the death of the testator, Charles H. Wiener, and is still true, since none of the infants have attained the age of majority.

There is also a direction to the guardian of these infants' estate as to the disposition of the net income. He is directed to provide for their support, maintenance and education, out of this net income. A fair interpretation of this part of this will does not require the guardian to pay out the entire income to these children. It is as much the duty of the guardian of their estate to conserve the estate, as it is the duty of the trustee. The amount of the estate in the hands of the guardian would be dependent upon the amount of the net income paid to him by the trustee and the requirements of these children. One or more of these children might have neither the desire, nor the aptitude for higher education, and in such case would not be entitled to an allowance by the guardian of the estate for this purpose.

Under this will, the bank designated was appointed both as executor and trustee of the decedent, Charles H. Wiener. Likewise, Emanuel H. Wiener was appointed guardian of the estate only of these three minor children, and is still serving as such. Their mother, who was divorced from and survived the testator, was appointed as guardian of the person of these three infants.

At the time of the death of the testator, among other assets the decedent owned substantially one-half of the common stock in each of two corporations. The remaining one-half was substantially owned by Emanuel H. Wiener personally; that is, by the present guardian of the estate of

these infants. These companies were The. E. H. Wiener Company and The Wiener Building & Storage Company. The former was a produce company, which did business and occupied the premises of the latter. The building of the latter had been recently erected and the cost thereof was partially unpaid.

Both Emanuel H. Wiener and Charles H. Wiener, the decedent, who were brothers, prior to the death of the latter, had signed company notes for The Wiener Building and Storage Company to partially cover the cost of the erection of this building, and in addition, and as security, had signed as individuals on said notes. The executor-trustee, likewise, had notes executed in the same manner. At the time of the death of Charles H. Wiener, these notes were unpaid.

Charles H. Wiener, it was also claimed, owed The E. H. Wiener Company individually some $54,000. Emanuel H. Wiener, it appears, also owed The E. H. Wiener Company a large sum of money, which in December, 1932, aggregated the huge sum of nearly $250,000.00, as shown by applicant's exhibit 11, which, this exihibit also states, was largely incurred prior to July 23, 1929.

In this situation in March, 1930, Emanuel H. Wiener, who was acting as guardian of the estate of these infants, and The First City Trust and Savings Bank, as successor executor-trustee to The First Trust and Savings Bank under the will of Charles H. Wiener, deceased, entered into an agreement whereby all of the· stock of the testator, Charles H. Wiener, was sold by the executor-trustee to, and was purchased by Emanuel H. Wiener for the total fixed sum of $163,500.00. The consideration was as follows:

First: Cash, $25,000.00.

Second: In satisfaction of Charles H. Wiener's claimed indebtedness to The E. H. Wiener Company, $54,006.74.

Third: For the balance, Emanuel H. Wiener executed his personal note in the sum of $84,493.26, one-fifth of which was to be paid each succeeding year thereafter with interest at six per cent.

This deferred payment was secured by a deposit of the very 500 shares purchased by Emanuel H. Wiener, plus an additional 100 shares of the stock theretofore held by Emanuel H. Wiener.

A further and important provision of this contract and of the consideration therefor, was that Emanuel H. Wiener, the purchaser of the stock, was to see that the company now owned solely by him, The E. H. Wiener Company, and The Wiener Building and Storage Company, of which latter company he was the half owner and the executor-trustee the owner of the remaining half (by virtue at least of stock ownership), were to enter into a lease, in which The Wiener Building and Storage Company was to lease to The E. H. Wiener Company the premises of the former, for the term of ten years, and The E. H. Wiener Company was to pay, as a rental for the term of ten years, the annual sum of $22,500.00, and in addition was to pay all of the taxes, assessments and insurance, as well as to maintain the building of The Wiener Building and Storage Company. This lease was executed and recorded substantially in compliance with the agreement. At the time of making this agreement, as above noted, Emanuel H. Wiener was the guardian of the estate of these minor children. He made this purchase personally. The purchase was property beneficially belonging to his wards. True, they had not the legal title, but whoever held the legal title, the equitable ownership was theirs.

Disregarding the form and looking to the substance, here is a plain case of a fiduciary dealing in and purchasing personally, the property of his wards. It does not do to say that he could not personally fix the price. That he had an interest in purchasing, as cheaply as possible, a part of the estate of his wards, was a sufficient conflict of interest.

The bank's position was no better. As trustee for these wards, its main duty was to act for and in their best interests. As a personal creditor of the testator, its self-interest would suggest a sale, beneficial or otherwise, of this trust property and out of the proceeds, to pay itself the debt owing by the testator to it. This is exactly what it did. In this, there was again a plain conflict of interest.

It is true that this agreement was submitted to the Probate Court for its approval. But the infants were not made a party to that proceeding. There was in that application no independent representation of these infants.

It is said that the estate benefited greatly by this sale.

This court has no way of knowing whether this is true or otherwise. Had this sale been a cash transaction, as we think it should have been under the proper interpretation of the power contained in this will, this might be true. The application made to the Probate Court was not one for the purpose of obtaining consent to a sale of personal property to pay the debts of the decedent's estate, but was of a different character entirely.

Under various sections of the statutes as they were in 1930, a sale of stock could not be made by an executor without an order of the court first being obtained permitting the sale.

It is not clear, in this case whether this was a sale by an executor, since the agreement to sell the stock was signed by the bank, both as executor and as trustee. If the will here gave power to the trustee to sell, however, these statutes would perhaps not apply.

What necessity there was for making application for approval of this sale does not appear, unless perhaps it was regarded as a sale by the executor to pay debts, or unless there was doubt about the power of a successor in trust to make such a sale, or unless there was doubt about the power contained in the will allowing a sale for other than cash.

Under old Section 10706, General Code, upon obtaining an order, an executor could sell stock, on the statutory prescribed terms of credit. But the mandatory requirement was that he take as security for the deferred payment, the note of the purchaser with two or more approved sureties.

There perhaps was some doubt as to the requirements of the proceeding to sell stock in order to obtain the prerequisite order of the Probate Court under these old statutes. Should it be an adversary proceeding? If adversary, should there be a *guardian ad litem* appointed for the infant to investigate, make inquiry and thereby protect the rights of the infants involved, which would be the duty of a *guardian ad litem,* as pointed out by our Supreme Court in *Long* v. *Mulford,* 17 O. S., page 503?

The proceeding here in question had, was not adversary. It was merely *ex parte,* and did not assume the character of any real controversy, so far as these infants were concerned. If the proceeding was solely for the protection of the pur-

chaser, Emanuel H. Wiener, who was at that time the guardian of these infants, and for the protection of the executor-trustee, and the will gave no authority to the executor-trustee to extend credit, then the infants also were entitled to have the surety protection pointed out in Section 10706, General Code, in respect to deferred payments and executory parts contained in the contract of sale to be performed by Emanuel H Wiener.

Apart from the specific directions for security pointed out by the above statute, it occurs to the court that where the deferred payments were as large as stipulated by this sale, the rule of reasonable care and diligence required on the part of a trustee in extending credit in respect to a sale made by him, could be no less than the statutory requirement, itself.

It is not necessary for the court to determine whether one or the other of the parties to this agreement benefited. One or the other, or both benefit, in respect to every contract made. But in this case the contract is still executory. Default has been made in the payment of both principal and interest installments on the note. The rent provided to be paid under the terms of this lease, is in default, or what in substance amounts to a default. The rent has been twice reduced, and instead of paying the stipulated amount of $22,500. per year, there is being paid but the sum of $9,600. per year. These infants are again affected by this situation, since the rentals received by The Wiener Building and Storage Company, by virtue of their ownership of one-half of this stock, belongs to these infants. True, they are not directly entitled to them, since their ownership is but of the stock, and this stock is held by the trustee in trust for them with only the net income derived therefrom to be paid to the guardian of their estate, to be used toward the payment of the cost of their maintenance, education, etc. But in all of this, the court will regard the substance, rather than the form, irrespective of how circuitous it may be.

It is said that perhaps the rental is a fair rental. But irrespective of this fact, it becomes immediately apparent, that in the reduction of this rental, the infants again were wholly unrepresented by independent judgment.

Again, we have here a corporation which, after the pur-

chase of this stock belonging to these infants, was solely owned by Emanuel H. Wiener. It carried a surplus item of account on its financial records which, on December 30, 1932, aggregated $241,319.87. In reality it had no such surplus fund, but that it had non, was because of withdrawals by Emanuel H. Wiener. The propriety under such circumstances of insisting on the performance of the terms of the lease of his company, The E. H. Wiener Company, in respect to the payment of the stipulated rental, (which was a substantial part of the consideration involved in his individual purchase of this stock) in view of the facts, becomes debatable. In view also of these circumstances, the court thinks in this case, that Emanuel H. Wiener should have resigned as guardian of these infants, and likewise the bank as trustee, the guardian since, in substance, he was purchasing his own wards' property, and the bank, since as a fiduciary, it was selling its beneficiaries' property at a time when the estate was debtor to it and when it could perhaps be paid only by selling.

Courts of equity have always regarded such transactions with suspicion. The question in such and similar cases is not: Have the beneficiaries been injured?, but rather: What is the general tendency of permitting such transactions?

Applicants make complaint about an item of $1974.33, which the guardian, Emanuel H. Wiener, received on November 7, 1931. Just how this transaction occurred is not clear. The matter was perhaps one merely of wrongful accounting on the part of the executor-trustee in crediting and debiting. But this is not commendable practice. If the trustee had an installment to be paid to the guardian, it should have been paid in cash to the guardian, and the guardian should then have been charged therewith. The guardian, of course, could not proceed to use such money or commingle it with his own money. This record perhaps leaves the inference that he did proceed to use the same, when in truth and fact, he never actually received the same.

But referring again to the question of removal. The bank now acting as executor-trustee, is insolvent. A successor, of necessity, must be appointed. Insofar as the guardian of the estate is concerned, the court is of the opinion that he should be removed. The guardian of the es-

tate is a fiduciary, as defined by the statute. It is not a question of any conscious wrongdoing on the part of Emanuel H. Wiener, as the guardian of the estate of these infants. His personal interests as herein pointed out, are in direct conflict with the interest of his wards and with the duty which he owes to his wards, even allowing for the intervention of the executor-trustee herein. It is true that he does not have control of the corpus of the trust property, but of the income only. But what is the source in part at least, of this income? Clearly from the income paid by a corporation substantially solely owned by him.

The court's duty is to properly safeguard the rights of these infants, whose property is here involved. This court has no right to pass on the question of whether the original sale of the stock of these infants was for their best interest. But this contract is still executory, and whether the present rental is or is not adequate, need not concern the court in his present inquiry. It is rather the right on the part of these infants to have a wholly disinterested person survey this situation. The present guardian is in no position to do this, and the bank, as executor-trustee, has likewise failed to do so.

As above ponted out, the least that can be said in respect to the default in the payment of these rentals and the default in the payment of the accruing installments of both principal and interest on the note taken by the bank in the sale of his stock, is that these infants are entitled to some independent representation.

Counsel has suggested that the motive of this application is merely the desire on the part of their mother, to obtain a greater allowance for these children. The court, however, in this case will see to it that only that which is actually needful, be paid toward the maintenance and education of these boys. If the court is right about the present prospect of income from the estate herein involved, the amount of any such allowance will of necessity be conservative.

It is the finding of this court in this matter, that the interest of the trust demands the removal of Emanuel H. Wiener, the present guardian of the estate of these infants.